The opinion of the Court was delivered by
DuNKiN, Ch.
On 12th August, 1820, Vardry McBee, “for the consideration of having a Male and Female Academy established near Greenville Courthouse,” conveyed to Jeremiah Cleveland and others, the then “ acting Trustees of the Green-ville Academy,” thirty acres of land in that vicinity, to be held *474 by them, their successors in office, (or a majority of them,) or their assigns forever. By an Act passed in December of the same year these trustees were incorporated under the name and style of “The Trustees of the Greenville Academies.” The charter of incorporation has been renewed, and by the Act of December, 1851, it was renewed for fourteen years with power of holding real estate to the value of twenty-five thousand dollars.
At the period of the grant by Vardry McBee the lands were of comparatively inconsiderable value, not exceeding (it was said) three hundred dollars. But other persons had subscribed liberally for the same purpose — valuable buildings were erected on the lands, and for many years the academies thus established were ably conducted and successfully maintained. For reasons very fully set forth in the petition these institutions have gradually declined — the buildings are in a state of dilapidation and pupils have ceased to attend. The establishment of a male academy in the village, under the superintendence and patronage of the Baptist Convention of South Carolina, with a staff of learned and able professors, has not only superseded the necessity of any other male academy at that place, but has rendered the success of any other hopeless, if it were desirable. For some time past the Baptist Convention had it in contemplation to establish also a female seminary, which, according to the construction of (their charter given by this Court, they had authority to do. In order to induce the convention to locate the seminary at Greenville, the Board of Trustees of the Greenville Academies proposed to transfer to the Baptist Convention, what are called, the Academy lands, “for the purpose of endowing a female college, on condition, that the said Baptist Convention would forever keep up in the village of Greenville both a male and female school, where all the branches usually learned in a male and female academy shall be taught by competent and able teachers and which shall be open to the whole community.” It has been said that this was the proposition of *475 the board of trustees. It is true that some members of the board objected and for reasons which they have set forth in their answer. But, as well from the express terms of McBee’s deed,_as_up.on general principles, theJiotjon,ofjhe.majority of the_trustees. upon..any matter within their, .competency is .the act of the corporation. The trustees state in their petition the conviction of their board that they have the right to make the proposed transfer under the deed of Y. McBee and the terms of their charter, but that in deference to the objections that have been made as well as to avoid involving the Baptist Convention in any litigation, they had deemed it proper to ask the permission of the Court to do so.
Upon the hearing of this petition and answer, and the evidence submitted, a decretal order was made, on 15th of July, 1854, “ that the petitioners have leave to transfer their trust and trust estate to the Baptist Convention of Sóuth Carolina, or to the trustees of the Furman University, who, thereupon, shall be substituted as trustees in place of the existing board of trustees; on the express condition however, that such substituted trustees” shall, in all repects, execute the trusts declared in the deed of V. McBee, dated August 12, 1820, and particularly shall keep up and maintain, at or near Greenville Court House, institutions of learning for the instruction of boys and girls in all the departments of education usually taught in male and female academies, for the use of the community, and without preference asjto terms of admission of any particular sect of Christians.” From this decretal order an appeal was taken, upon the various grounds submitted in the brief.
In the argument of the cause here the decree pronounced at the Circuit has been treated by the appellees as no more than an ordinary act of the Chancellor for the change or substitution of trustees, and it has been intimated that it was an application addressed to the discretion of the Judge, from whose decision an appeal would not properly lie. Upon motions for a continuance, or any such question arising in the *476 carriage of the cause, this Court, principally from considerations of convenience, never interferes with the decision of the Circuit Court. But it is certainly a misapprehension to suppose that upon questions addressed to the judicial discretion of a Chancellor, an appeal will in no case be entertained from his decision. No motion can be more emphatically for the discretion of a Chancellor than an application for an issue at law. But, in Hampton vs. Hampton, 3 Ves. & Bea. 41, Lord Eldon held, that “ a refusal to send a cause to a jury was a just “ ground of appeal if the Court of Appeals should think that the contrary decision would have been a sounder exercise of discretionand so it was ruled in this Court in Jaggers vs. Estes, 3 Strob. Eq. 34, following Drayton vs. Logan, decided in 1824. In Jaggers vs. Estes, the Appeal Court refused to interfere with the judgment of the Chancellor on the question of continuance, but reversed his decision on the motion for an issue. But the amation and substitution of a trustee is sometimes the most difficult question in a cause, and, it may be, the most important, involving not only property, but character. A trustee may be removed for misconduct, or incapacity, and for other reasons. The principal object of proceedings is sometimes to remove an executor, or other trustee, for incompetency. Supervening insolvency is sometimes regarded as sufficient cause to change the trustee. But if a son known to be insolvent, should be appointed executor by his father, and should afterwards be removed by order of the Chancellor on the ground of insolvency, it might be said, and properly, that the removal and substitution of trustees is for the discretion of the Chancellor, but it is, nevertheless, a proper subject of appeal, and if, as in the case supposed, in the opinion of the appeal tribunal he has miscarried in judgment, it is their duty to revise the same and re-instate the executor.
I think no doubt is entertained that a corporation may be appointed trustee, either by an individual or by the act of the Court, provided the duties to be discharged are within the *477 powers granted by the charter. The general principle is stated by all the modern elementary writers, and is well illustrated by Mr. Justice Story, in Vidal vs. Mayor of Philadelphia, 2 Howard, 128 — a case involving the validity of Stephen Girard’s will. But it is insisted on the part of the appellant that this is only nominally an order for the change and substitution of trustees — that it is, substantially, and in effect, a transfer of one incorporation with all its rights and privileges to another and different corporation, a power which it is not competent for this Court to exercise, but is essentially a political power and belongs to another department of the government. In this view some members of the Court concur, but it is not deemed necessary to express any definite opinion on that construction of the order.
Corporations are divided into ecclesiastical (or religious) and lay. Lay corporations are again divided into civil and eleemo-syn'ary. Among eleemosynary corporations are classed colleges and academies established for the promotion of learning and piety, and endowed with property by public and private donations. The State Convention of the Baptist denomination was incorporated essentially as a religious society, although vested with large powers in relation to education. The Trustees of the Greenville Academies are a lay corporation of an eleemosynary character. It is conceded that by the decretal order the Baptist Convention become the Trustees of the Greenville Academies, become the Corporation established by that name in 1820, and entitled, as such, to the escheated property in Greenville District, granted by the Act of 1822, and to all other rights and privileges appertaining to that Corporation. If it may be gravely questioned whether it be within the scope and purview of the charter incorporating the Baptist Convention that they should be permitted to accept this additional charter: it is very clear that such amalgamation should only be sanctioned from considerations of pressing necessity. It is not perceived that any such necessity exists. *478 The prayer of the petition does not seek it. They ask for leave to transfer the property for the consideration stipulated, and not for a change of trustees. The subsequent resolutions of the Convention, to which the Court was referred by the appellees, treat the proposal as an offer to transfer the lands on stipulated conditions in which they formally acquiesce.
By the deed of Y. McBee, the title to the land is vested in the trustees and their successors, or a majority of them; and by the charter of incorporation, the trustees have authority in the most ample terms, to lease, sell, alien and convey the real estate belonging to the Corporation. The purposes of the trust were to maintain and keep up a male and female academy in the vicinity of Greenville. In carrying out these objects the trustees were unrestricted.
In the choice of instructors, in the amount and mode of compensation, the will of the majority of the trustees was necessarily the only rule of action. They might select for teachers, Baptists, Episcopalians, Roman Catholics, or persons of any other religious denomination; and they might stipulate to pay them by the quarter, by the year, or in any other mode upon which they could agree. If they could find a corporation or individuals who would undertake to keep up the schools in a satisfactory manner for a term of years, or in perpetuity, the trustees are not restrained from making a contract to that effect, or from compensating the contracting party by a transfer of so much of the corporate property as they may deem an adequate equivalent.' But the party contracting may fail in his stipulations. In that event, the trustees of the Gi'eenville Academies have a plain and adequate remedy. But if the trustees of the Greenville Academies are merged in the Baptist Convention — if the two corporations are united under the decretal order which has been made — although this Court has the power to correct any abuse of a trust, it is not very easy to perceive upon whose motion the application would he made. As a matter of expediency and in furtherance of the objects of *479 tbe trust, it is better that the Baptist State Convention and the Trustees of the Greenville Academies should continue to exist as separate and distinct corporations — that the petitioners should be left to make their own arrangements with the Baptist Convention, and to see to the fulfilment of them. Being of opinion that the petitioners required no aid or authority from this Court in making the transfer of the lands, and that the change of trustees was unnecessary and inexpedient, it is the judgment of this Court that the petition should be dismissed, but without costs. It is so ordered and decreed.
Wardlaw, Withers, and Glover, JJ., concurred.